Rory R. Jones (ISB 2934)
**Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A.**
225 North 9th Street, Suite 820
Post Office Box 1097
Boise, Idaho  83701
Telephone: (208) 331-1170
Facsimile:  (208) 331-1529

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT FOR THE STATE OF IDAHO

| | |
|---|---|
| NORTHWEST OSTEOSCREENING, INC., an Idaho corporation, directly and derivatively in its capacity as a member of IDAHO HEALTH SCREENINGS AND VACCINATIONS, LLC, an Idaho limited liability company, PREVENTATIVE HEALTH, LLC, an Idaho limited liability company, and DANIELLE BENNION,<br><br>                    Plaintiffs,<br><br>v.<br><br>MOUNTAIN VIEW HOSPITAL, LLC, a Delaware limited liability company, BENJAMIN WOOD, JAMES ADAMSON, JOSH TOLMAN, SIASCONSET, LLC, an Oregon limited liability company, PREVENTATIVE HEALTH, LLC, a Delaware limited liability company, WELLNESS SCREENINGS, LLC, an Idaho limited liability company, and DOE ENTITES I – X.<br><br>                    Defendants. | Case No.<br><br>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** |

        Plaintiffs Northwest OsteoScreening, Inc. ("Northwest Osteo"), Danielle Bennion

("Bennion") and Preventative Health, LLC (Idaho version), by and through their attorneys of

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

record, **Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A.,** hereby complain and allege against Defendants Mountain View Hospital, LLC ("MVH"), Benjamin Wood ("Wood"), James Adamson ("Adamson"), Josh Tolman ("Tolman"), Siasconset Holdings, LLC ("Siasconset"), Preventative Health, LLC, ("Preventative Health") (Delaware version) and Wellness Screenings, LLC ("Wellness Screenings") as follows:

## I.
## PARTIES, JURISDICTION & VENUE

1.      Plaintiff Northwest Osteo is, and at all material times hereto was, an Idaho corporation.  Northwest Osteo is a member of Idaho Health Screenings and Vaccinations, LLC ("IHSV"), an Idaho limited liability company.

2.      Plaintiff Bennion is, and at all material times hereto was, an Idaho resident. Bennion is the owner and operator of Northwest Osteo.  Bennion is also the owner and manager of Plaintiff Preventative Health.

3.      Plaintiff Preventative Health is, and at all material times hereto was, an Idaho limited liability company.

4.      Defendant MVH is, and at all material times hereto was, a Delaware limited liability company with its principal place of business in Idaho Falls, Idaho.

5.      Defendant Preventative Health is, and at all material times hereto was, a Delaware limited liability company.

6.      Defendant Wellness Screenings is, and at all material times hereto was, an Idaho limited liability company, d/b/a Wellness Screenings and Vaccinations.

7.      Defendant Siasconset is an Oregon limited liability company.   Defendant Siasconset is, and at all material times hereto was, a member of IHSV.

8.      Defendant Wood is, and at all material times hereto was, an Oregon resident. Wood is a manager and/or member of Defendants Preventative Health, Wellness Screenings, and Siasconset.   Wood acted as attorney for IHSV.

9.      Defendant Adamson is, and at all material times hereto was, an Oregon resident. Adamson is the Chief Executive Officer of MVH.  Upon information and belief, Adamson is an owner and/or member of Defendants Preventative Health, Wellness Screenings, and Siasconset.

10.      Defendant Tolman is, and at all material times hereto was, an Idaho resident. Tolman is currently the Chief Administrative Officer of MVH and for most of the matters covered in this Complaint was a Vice President of MVH.  Upon information and belief, Tolman is an owner and/or member of Defendants Preventative Health, Wellness Screenings, and Siasconset.

11.      Plaintiffs do not know the true names or identities of Defendants sued herein as Doe Entities I – X.  Plaintiffs pray leave that when the true names or identities of said Defendants are ascertained, Plaintiffs may be permitted to amend this Complaint to assert the name or names of these Defendants with appropriate allegations.

12.      This Court has personal jurisdiction over the Defendants pursuant to and by virtue of Idaho Code § 5-514 as each of the Defendants at all material times hereto have transacted business in the State of Idaho.

13.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiffs are seeking to recover under a federal statute, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq*.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 in that Plaintiffs' state law claims are so

related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## II.
## GENERAL ALLEGATIONS

15.     Plaintiffs reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 14 as if set out in their entirety.

16.     Bennion has been involved in the preventative health screening industry since approximately 2001.  Bennion owns and operates Northwest Osteo.  Northwest Osteo does business under a registered d/b/a known as "NW Health and OsteoScreening."  Northwest Osteo provides various onsite preventative health screening services to businesses and governmental entities in the form of blood draws, blood pressure checks, body mass index calculations, bone density screenings, and influenza and/or pneumonia vaccinations.  Over the last approximately ten years, Northwest Osteo has built a solid reputation and acquired many large volume governmental and corporate clients.

17.     Prior to 2011, Northwest Osteo operated on a direct billing basis; that is, it was paid for its services by either the patients or their employers.  Northwest Osteo did not (and could not) bill the patients' first party health insurance providers because it did not have a licensed medical provider on staff and was therefore not a "credentialed provider" per the State of Idaho Department of Insurance regulations and the provisions contained in most health insurance policies/plans.

18.     In January 2011, MVH hired Bennion to be its government liaison/lobbyist. Bennion's official title was "Director of Government Affairs."  In this capacity, MVH agreed to compensate Bennion for her services at the rate of $150.00 per hour.  It was anticipated that

Bennion would work approximately 1,000 hours per calendar year and thereby gross $150,000.00 annually.

19.     Also in January 2011, certain portions of the Patient Protection and Affordable Care Act ("Affordable Care Act") went into effect.  One of the most significant reforms enacted under the Affordable Care Act, which applied to both new and existing health insurance plans, was the elimination of the requirement for a deductible, co-insurance, or co-payment for many preventative health care services.

20.     On March 17, 2011, Bennion had a telephone conversation with Adamson, the Chief Executive Officer of MVH, wherein she discussed with Adamson the provisions of the Affordable Care Act referred to above and the potential for a joint business opportunity between Northwest Osteo and MVH.  In response to Bennion's inquiry, Adamson repeatedly stated to her: "I smell money."

21.     At Adamson's request, on March 18, 2011, Bennion sent an explanatory e-mail to Adamson's business associate, Wood, a health care attorney living in Portland, Oregon.  In the March 18, 2011, e-mail, Bennion proposed a business arrangement, whereby her company, Northwest Osteo, would perform certain on-site preventative health care services which would be billed out to the patients' health insurance providers by MVH, which is a "credentialed provider."  MVH would then retain a percentage of the collected revenue and Northwest Osteo would receive the remainder of the collected revenue.  In addition to its retained percentage of collected revenue, MVH also stood to benefit financially by referrals of these patients from Northwest Osteo for any necessary follow-up services or procedures.

22.     Adamson insisted that in order for the proposed business proposition to be smoothly and quickly implemented and to ensure that Bennion receive prompt payment, it would

be necessary to have Wood form a new business entity to perform these services in which she would own fifty percent (50%) and Adamson, Wood, and Tolman, the then Vice President of MVH, would own the other fifty percent (50%). Adamson stated that Wood would serve as a "filter" between MVH and this new entity to "ensure" payments were made in a timely manner.

23.     Adamson further assured Bennion that MVH had the expertise and resources to comply with all applicable rules, regulations and insurance company requirements to facilitate timely billing and payment. It was agreed upon and understood that Bennion would manage the day-to-day operations of the new entity and would be paid $150.00 an hour for her services, the same hourly rate she was then being currently paid by MVH in her capacity as its government liaison/lobbyist.

24.     Accordingly, IHSV was formed by Wood on March 28, 2011. Bennion was the initial registered agent for IHSV. NW Wellness Services, LLC, was listed as an initial member of IHSV with the Idaho Secretary of State. Upon information and belief, NW Wellness Services, LLC's initial members were Wood, Adamson, and Tolman.

25.     On May 1, 2011, IHSV and MVH entered into a written Professional Services Agreement ("May 1, 2011, Agreement"). The essence of the May 1, 2011, Agreement was that: (1) IHSV would provide certain preventative health care screening services; (2) MVH would bill the patients' health insurance companies (or the patients directly) for these services; and (3) MVH would retain thirty percent (30%) and timely pay to IHSV seventy percent (70%) of all fees collected for services performed by IHSV.

26.     Pursuant to the May 1, 2011, Agreement, IHSV began performing preventative health care services in mid-May 2011 at a number of clinics throughout the State of Idaho.

27.     Shortly thereafter, on June 6, 2011, IHSV's Certificate of Organization was amended to delete NW Wellness Services, LLC, as a member and to add Piedmont Group, LLC, an existing Oregon limited liability company previously created by Wood on October 16, 2009, and Northwest Osteo, Bennion's longstanding company, as members.

28.     Later, on August 1, 2011, IHSV's Certificate of Organization was amended a second time to substitute Siasconset in place of Piedmont Group, LLC.  Accordingly, the final membership roster for IHSV consisted of two entities, one in which Wood was a manager and/or member (Siasconset) and one which was owned by Bennion (Northwest Osteo). Upon information and belief, Defendants Adamson and Tolman are also managers, owners, and/or members of Siasconset.

29.     In August 2011, the business relationship between IHSV and MVH began to deteriorate.  After obtaining a cash flow analysis created by Bennion and thereby realizing the high volume of patients being serviced and revenue being generated by IHSV at various clinics throughout the State of Idaho, Adamson attempted to force Bennion out as Manager of IHSV.

30.     On or about August 10, 2011, Wood flew to Boise to meet with Bennion.  Wood, Adamson and Tolman attempted to gain control of IHSV by offering to buy out a portion of Northwest Osteo's interest in IHSV.  Wood told Bennion that IHSV would need an additional $30,000 cash infusion in order to "float" the business (because IHSV had yet to be paid by MVH for its services).  Wood indicated that Adamson would like to offer to pay Northwest Osteo's portion ($15,000) in exchange for an increased ownership in IHSV.  Bennion declined this offer.

31.     In September 2011, Adamson, through his associate, Wood, sent a proposed "Management Agreement" to Bennion.  The Management Agreement provides for Bennion's removal as the day-to-day Manager of IHSV and the transfer of operational control and oversight

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 7

to a person designated by the "management company," SanKaty Healthcare Management, LLC, in which, upon information and belief, Wood, Adamson, and Tolman were managers, owners, and/or members.

32.     Bennion refused to sign the proposed "Management Agreement." In addition, Bennion angered Adamson by calling into question whether certain billing practices by MVH were being lawfully conducted in conformance with applicable insurance regulations. Adamson proceeded to threaten, intimidate, and harass Bennion in September 2011. On September 19, 2011, during a telephone conversation, Adamson also threatened to fire Bennion from her position as MVH's Director of Government Affairs and/or terminate the May 1, 2011, Agreement between IHSV and MVH if Bennion did not "do exactly as she was told" and sign the proposed "Management Agreement." Adamson additionally informed Bennion he would destroy her professional reputation unless she acquiesced to his demands. Adamson's conduct during the telephone conversation also included screaming multiple profanities at Bennion and accusations of misuse of MVH monies.

33.     Bennion, feeling trapped by Adamson's threats and under great duress and emotional distress, resigned her position with MVH on September 26, 2011.

34.     Shortly thereafter, on November 1, 2011, as a means to gain control of IHSV, Wood sent a proposal to Bennion's spouse, Michael Bennion, wherein Wood offered to buy out eighty-five percent (85%) of Northwest Osteo's interest in IHSV. Wood's proposal was unacceptable to Bennion.

35.     On November 10, 2011, when IHSV needed a $17,500.00 capital infusion from each of its two members because it had not yet received any payment from MVH, Adamson paid Siasconset's portion via a wire transfer from his personal bank account.

36.     On November 14, 2011, Bennion formed and duly registered three limited liability companies with the Idaho Secretary of State's Office: Preventative Health, LLC, Preventative Health Services, LLC, and Preventative Health Screenings and Vaccinations, LLC.

37.     On November 17, 2011, Wood formed and registered in Delaware a limited liability company also called Preventative Health, LLC.

38.     Upon information and belief, in November 2011, in violation of the May 1, 2011, Agreement, MVH entered into an agreement with the Delaware version of Preventative Health to provide the same preventative health care screening services that it had previously contractually agreed to exclusively obtain through IHSV.

39.     In anticipation of MVH's entering into the agreement with the Delaware version of Preventative Health, on November 14, 2011, Terri Waldorf, who had briefly worked for IHSV as a consultant, (and was also a consultant to Adamson and Wood for another business venture), sent an e-mail to Melissa Clayton, an IHSV employee, and various other individuals, including Wood, indicating that Wood would be sending out an e-mail to IHSV staff members informing them that on November 18, 2011 (the day after the formation of the Delaware version of Preventative Health), IHSV would be "ceasing to do health screenings." The e-mail further indicated that once the e-mail was received from Wood, the recipient of the e-mail would need "to send the Idaho Falls staff another email" stating the following:

> A new company has been formed to replace IDHSV. This company is called: Preventative Health. Preventative Health, as was IDHSV, will be in partnership with Mountain View Hospital to perform screening and vaccinations for various employers in and around Idaho Falls and throughout Idaho. We invite you to be a member of the Preventative Health Team as you were for IDHSV. We are in the process of identifying a day in December where we will host a meeting for you to transfer your current employee paperwork to our new Preventative Health Screening company. You will continue working with our current Team we have in place under IDHSV. If you have any questions please do not hesitate to contact me via email or call me at: _____.

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 9

40.    On February 15, 2012, counsel for Bennion and Preventative Health, LLC, Preventative Health Services, LLC, and Preventative Health Screenings and Vaccinations, LLC, all of which, are and were at the time Idaho limited liability companies sent a cease and desist letter to Wood and Adamson advising them that their use of the name Preventative Health and/or Preventative Health Screenings and Vaccinations to conduct business in the State of Idaho was a violation of both statutory and common law.  To this point that demand has been ignored.

41.    The Delaware version of Preventative Health is a member of Wellness Screenings, which was formed by Wood on February 21, 2012.   Wood is the manager of Wellness Screenings.

42.    Upon information and belief, Wellness Screenings continues to conduct health care screenings in the State of Idaho by virtue of an agreement with MVH in violation of MVH's May 1, 2011, Agreement with IHSV.

43.    In addition, Wood, Adamson, and Tolman, in conjunction with the Delaware version of Preventative Health (and later Wellness Screenings), misappropriated and continues to misappropriate confidential and proprietary information belonging to IHSV, Bennion, and Bennion's company, the Idaho version of Preventative Health, including their business model, their methods and strategy for the implementation and operation of preventative health care screening clinics, the process by which they would identify and attract clients, information from IHSV's website, various policies and procedures for conducting clinical preventative health care screening services, service agreement forms, patient billing forms, health care history forms, patient educational information, client lists, confidential cash flow analyses, and other trade secrets as defined in Idaho Code § 48-801.

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

44.     Wood, Adamson, and Tolman, in conjunction with the Delaware version of Preventative Health (and later Wellness Screenings), took multiple IHSV employees and made them employees of Preventative Health (and later Wellness Screenings).

45.     At the time MVH entered into the agreement(s) with the Delaware version of Preventative Health and/or Wellness Screenings, Wood was a manager, owner, and/or member of Siasconset, one of the two members of IHSV.  Upon information and belief Adamson and Tolman were also managers, owners, and/or members of Siasconset.

46.     Despite the fact that IHSV had complied, in all material respects, with its duties under the May 1, 2011, Agreement in the provision of preventative health care services, and despite the fact that MVH had already billed many of the clinic patients' insurance providers and already collected significant payment, as of January 2012, MVH had not paid or accounted for any of the collected fees whatsoever to IHSV.

47.     As a result of MVH's lack of payment, Bennion sought legal counsel to force MVH to account for and pay IHSV collected fees in accordance with the May 1, 2011, Agreement.  Four payments were eventually made to IHSV.  On January 31, 2012, Tolman traveled via airplane to Portland, Oregon, and hand delivered a check, payable to IHSV, to Wood, in the amount of $84,268.00.  Tolman's actions in delivering the check to Wood were in contravention of the May 1, 2011, Agreement because the check was not sent to Bennion at the official Boise, Idaho, address of record for IHSV.

48.     Three more checks were later sent to IHSV's attorney. On March 3, 2012, IHSV's attorney received a check for $16,037.40.  On April 9, 2012, IHSV's attorney received a check for $5,747.43.  On April 16, 2012, IHSV's attorney received a check for $7,961.55.

49.     On or about April 17, 2011, pursuant to Bennion's request for an accounting of the collected fees owed to IHSV under the May 1, 2011, Agreement, IHSV received limited billing records in the form of a manually generated Excel spreadsheet purporting to document payments received by MVH through March 26, 2012.   The spreadsheet also purported to document services performed by IHSV and thereafter billed out by MVH for clinics which occurred during the months of August through November 2011.

50.     By this time, Bennion had determined that MVH had failed and/or refused to pay IHSV several hundred thousand dollars owed by MVH to IHSV under the terms of the May 1, 2011, Agreement.  IHSV had not received any records whatsoever from MVH for the health care service clinics which were performed during the months of May, June and July of 2011. Bennion, however, possessed information which established that approximately 250 patients who were provided health care screening services at those clinics were unaccounted for and that these services should have resulted in collected charges  of more than one hundred thousand dollars ($100,000.00).

51.     Bennion's analysis of the limited records provided by MVH on or about April 17, 2012, also revealed that those records were incomplete and inaccurate in a number of material respects.  For example, the records provided by MVH failed to account for services provided to approximately 1,600 patients attending health care service clinics throughout the State of Idaho between August 2011 and November 2011.   These unaccounted for patients were provided health care screening services which should have resulted in collected charges, seventy percent (70%) of which should have been paid to IHSV, in excess of several hundred thousand dollars.

52.     The records provided by MVH also contained no evidence of a preventative medicine wellness charge billing code for approximately 936 patients to whom such services

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 12

were provided by IHSV – in partnership with MVH – and which were billed out and collected by MVH but not accounted for.  These missing charges amount to several hundred thousand additional dollars in unaccounted for collected charges, seventy percent (70%) of which should have been paid to IHSV.

### III.
### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

53.     Plaintiffs reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 52 as if set out in their entirety.

54.     Pursuant Rule 23.1 of the Federal Rules of Civil Procedure and Idaho Code Section 30-6-902, Northwest Osteo in part brings this action derivatively on behalf of IHSV to enforce IHSV's contractual rights under the May 1, 2011, Agreement as well as for additional relief sought herein.  As of the date herein, IHSV has failed to enforce those rights.

55.     Northwest Osteo is, and all material times hereto was, a member of IHSV and will adequately represent the interests of IHSV in this litigation.

56.     Northwest Osteo's derivative causes of action are not collusively made in order to confer jurisdiction in Federal Court.

57.     A pre-suit demand upon IHSV would be a useless and futile act because IHSV has only one other member, Siasconset. Siasconset was formed by Wood.   In addition, upon information and belief, Wood, Adamson, and Tolman are the managers, owners, and/or members of Siasconset. Wood, Adamson, and Tolman are also named Defendants in this action.   As alleged elsewhere in this Complaint, Siasconset, Wood, Adamson, and Tolman are alleged to have engaged in various fraudulent and unlawful conduct to the detriment of IHSV. Accordingly, a pre-suit demand upon Siasconset to enforce IHSV rights would be useless and

futile and is therefore excused under Federal Rule of Civil Procedure 23.1(b)(3)(B) and Idaho Code Section 30-6-902(2).

## IV.
## FIRST CAUSE OF ACTION
### (Northwest Osteo Derivatively in its Capacity as a Member of IHSV)
### (Breach of Contract Against MVH)

58.     Northwest Osteo realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 57 as if set out in their entirety.

59.     On May 1, 2011, IHSV and MVH entered into a written Professional Services Agreement (previously referred to as the "May 1, 2011, Agreement").  The essence of the May 1, 2011, Agreement was that: (1) IHSV would provide certain preventative health care screening services; (2) MVH would bill the patients' health insurance companies (or the patients) for these services; and (3) MVH would retain thirty percent (30%) and timely pay to IHSV seventy percent (70%) of all fees collected for services performed by IHSV.

60.     MVH has materially breached the May 1, 2011, Agreement by engaging in the following conduct:

      a.     Failing to compensate IHSV for its share of fees received for preventative health care screening services performed under the May 1, 2011, Agreement;

      b.     Entering into an agreement with an entity other than IHSV (the Delaware version of Preventative Health and/or Wellness Screenings) to provide preventative health care screening services; and

      c.      Failing to diligently pursue the billing and collection of charges for preventative health care screening services provided by IHSV under the May 1, 2011, agreement.

61.     The May 1, 2011, Agreement has never been terminated by IHSV or MVH and remains in full force and effect as of the date herein.

62.     As a direct and proximate result of MVH's actions, IHSV has suffered damages and is entitled to an award of damages in an amount to be proven at trial.

**V.**
**SECOND CAUSE OF ACTION**
**(Northwest Osteo Derivatively in its Capacity as a Member of IHSV)**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against MVH)**

63.     Northwest Osteo realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 62 as if set out in their entirety.

64.     The May 1, 2011, Agreement between IHSV and MVH contained an implied covenant of good faith and fair dealing. The acts and omissions of MVH, as described above, violated and significantly impaired IHSV's benefits and rights under the May 1, 2011, Agreement, thereby breaching the implied covenant of good faith and fair dealing.

65.     As a direct and proximate result of MVH's actions, IHSV has suffered damages and is entitled to an award of damages in an amount to be proven at trial.

**VI.**
**THIRD CAUSE OF ACTION**
**(Plaintiffs Bennion and Northwest Osteo,**
**Directly and in its Capacity as a Member of IHSV)**
**(Violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961**
***et seq.* and the Idaho Racketeering Act, Idaho Code § 18-7801 *et seq.* Against Wood,**
**Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness**
**Screenings)**

66.     Northwest Osteo and Bennion reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 65 as if set out in their entirety.

67.     At all material times hereto, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version), and/or Wellness Screenings were each a "person" within the meaning of 18 U.S.C. § 1961(3) and Idaho Code §18-7803(b).

68.     At all relevant times, Wood, Tolman, Adamson, Siasconset, Preventative Health (Delaware version), and/or Wellness Screenings, formed an association in fact for the purpose of misappropriating and converting money, property and labor belonging to IHSV and, ultimately, Northwest Osteo and/or Bennion.  The association in fact was an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and Idaho Code § 18-7803(c).  Further, Preventative Health (Delaware version) and/or Wellness Screenings were formed by Wood in order to facilitate acts of racketeering activity described in this Complaint and as such, Preventative Health and/or Wellness Screenings is also an enterprise within the meaning of 18 U.S.C. § 1961(4) and Idaho Code § 18-7803(c).

69.     As all material times  hereto, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version), and/or Wellness Screenings conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and Idaho Code §18-7803(d) in violation of 18 U.S.C. § 1962 and Idaho Code §18-7804.

70.     Specifically, at all material times hereto, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version), and/or Wellness Screenings engaged in a pattern of racketeering activity by engaging in the acts and omissions set forth in this Complaint, which acts are chargeable or indictable under the following criminal statutes: Idaho Code § 18-2403

(theft by deception, theft by obtaining money or property under false pretenses, theft by false promise, theft of labor or services or use of property, attempted theft by extortion) and Idaho Code § 18-2407(b) (grand theft). The conduct of the above identified Defendants also constitutes predicate acts of racketeering activity under 18 U.S.C. § 1961(1) in that the conduct of the Defendants involved attempted theft by extortion under state law and wire fraud under 18 U.S.C. §1343; that is they agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of Idaho Code § 18-7804(c) and 18 U.S. C. §1962(c). Further, they each committed, conspired to commit, and/or abetted the commission of two or more of these acts of racketeering activity; at least one of such acts occurred after the effective date of the Federal Racketeering Act and the Idaho Racketeering Act and the last of which occurred within five years after a prior incident of racketeering conduct.

71.     With regard to the violations of the state and federal criminal statutes, Northwest Osteo and Bennion allege as follows: on or between August 2011, and up to the date herein, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version), and Wellness Screenings did wrongfully take, obtain or withhold money or property of another, to wit:  money or property of IHSV, Northwest Osteo and/or Bennion of a value in excess of $1,000.00 with the intent to permanently deprive these Plaintiffs of that money or property or to appropriate the same to themselves or to third persons in violation of Idaho Code §§ 18-2403 and 18-2407.  In addition, the enterprise, through the conduct of Adamson, did wrongfully attempt to extort Bennion to surrender a property interest she held (the management position of IHSV and, ultimately, Bennion's ownership interest in IHSV) by demanding that Bennion sign a proposed management agreement which transferred day-to-day control of IHSV to SanKaty Healthcare

Management, LLC[1] and, if Bennion refused, Adamson would fire Bennion from her employment with MVH, and/or terminate the contract between IHSV and MVH, and/or destroy Bennion's professional reputation in further violation of Idaho Code §§ 18-2403 and 18-2407. Further, the enterprise, through conduct directed by Wood and in furtherance of the scheme or artifice to defraud IHSV, Northwest Osteo and/or Bennion, and/or for the purpose of obtaining money under false pretenses, transmitted or caused to be transmitted by wire into interstate commerce writing(s) for the purpose of executing the scheme or artifice to defraud in violation of 18 U.S.C. § 1343.

72.    The acts and omissions referred to in the previous paragraphs of this Complaint constituted a pattern of racketeering activity in that the acts alleged were related to each other by virtue of common participants (Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and/or Wellness Screenings), common victims (IHSV, Northwest Osteo, and Bennion), common methods of commission (the criminal acts identified above and the acts of fraud identified herein in this Complaint), and the common purpose and common result of misappropriating and converting money, property and labor belonging to these Plaintiffs.

73.    At all material times hereto and upon information and belief, Wood, Adamson, Tolman, and Siasconset conducted or participated, directly or indirectly, in the conduct of the affairs of Preventative Health (Delaware version) and/or Wellness Screenings through a pattern of racketeering activity within the meaning of Idaho Code § 18-7803(d) and 18 U.S.C. §1961(5), in violation of Idaho Code § 18-7804(c) and 18 U.S.C. §1962(c). Specifically, Wood, Adamson, Tolman, and Siasconset engaged in a pattern of racketeering activity by engaging in the acts and omissions set forth in this Complaint, which acts and omissions constitute violations of one or

---

[1] Upon information and belief, SanKaty Healthcare Management, LLC was owned, managed and/or operated in part by Wood, Adamson, and Tolman.

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 18**

more of the state and federal criminal statutes identified herein. That is, they agreed to conduct and participate, directly and indirectly, in the conduct of Preventative Health (Delaware version) and/or Wellness Screenings through a pattern of racketeering activity. Further, Wood, Adamson, Tolman, and Siasconset each committed, conspired to commit, and/or abetted the commission of two or more of the acts of racketeering activity; at least one of such acts occurred after the effective date of the state and federal racketeering acts and the last of which occurred within five years after a prior incident of racketeering conduct.

74.     As a direct and proximate result of the above-mentioned violations of the state and federal racketeering acts, IHSV, Northwest Osteo, and/or Bennion are entitled to a judgment, jointly and severally, against Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness Screenings awarding damages in an amount to be determined at trial, including treble damages as allowed under the state and federal racketeering acts. In addition, these Plaintiffs are entitled to a judgment ordering Wood, Adamson, Tolman, Preventative Health (Delaware version), Siasconset and/or their successors in interest, if any, to surrender, without compensation, all of their respective rights, titles and interest in Preventative Health (Delaware version) and/or Wellness Screenings without compensation.

## VII.
### FOURTH CAUSE OF ACTION
**(Plaintiffs Bennion and Northwest Osteo,
Directly and in its Capacity as a Member of IHSV)
(Against Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version),
and Wellness Screenings: Conspiracy Under the State and Federal Racketeering Acts)**

75.     Northwest Osteo and Bennion reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 74 as if set out in their entirety.

76.     At all relevant times, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version), and Wellness Screenings were each a person within the meaning of 18

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 19**

U.S.C. § 1961(3) and Idaho Code §18-7803(b). Wood, Adamson, Tolman, Siasconset, Preventative Health, and Wellness Screenings are collectively referred to herein as the "Conspirators."

77.     At all material times hereto, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness Screenings formed an association in fact for the purpose of misappropriating and converting money, property and labor belonging to IHSV, Northwest Osteo, and/or Bennion. The association in fact was an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and Idaho Code § 18-7803(c).

78.     As set forth in the preceding Count, upon information and belief, each of the Conspirators conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) and Idaho Code §18-7803(d), in violation of 18 U.S.C. § 1962 and Idaho Code §18-7804.

79.     At all material times hereto, each of the Conspirators was associated with the enterprise and conspired to violate one or more of the following statutes:  Idaho Code §18-2403 (theft), Idaho Code §18-2407 (grand theft), and 18 U.S.C. §1343 (wire fraud); that is they agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of Idaho Code §18-7804(d) and 18 U.S.C. §1961(4).

80.     The Conspirators committed and caused to be committed a series of overt acts in furtherance of the Conspiracy and to affect the objects thereof, including but not limited to the acts set forth in this Complaint.

81.     As a direct and proximate result of the above-mentioned violations of the state and federal racketeering acts, IHSV, Northwest Osteo, and/or Bennion are entitled to a judgment,

jointly and severally, against Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version), and Wellness Screenings awarding damages in an amount to be determined at trial, including treble damages as allowed under the state and federal racketeering acts. In addition, these Plaintiffs are entitled to a judgment ordering Wood, Adamson, Tolman, Preventative Health (Delaware version), Siasconset and/or their successors in interest, if any, to surrender, without compensation, all of their respective rights, titles, and interest in Preventative Health (Delaware version) and/or Wellness Screenings without compensation.

## VIII.
### FIFTH CAUSE OF ACTION
#### (Plaintiffs Bennion and Northwest Osteo,
#### Directly and in its Capacity as a Member of IHSV)
#### (Against Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version),
#### and Wellness Screenings: Civil Conspiracy)

82.     Northwest Osteo and Bennion reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 81 as if set out in their entirety.

83.     At all material times hereto, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version), and Wellness Screenings, entered into a conspiracy for the purpose of misappropriating and converting money, property and labor belonging to IHSV, Northwest Osteo, and/or Bennion as is more particularly described in this Complaint.  Wood, Adamson, Tolman, Siasconset, Preventative Health, and Wellness Screenings are collectively referred to herein as the "Conspirators."

84.     The Conspirators combined to use unlawful means, and/or they combined to commit lawful acts through unlawful means, to deceive these Plaintiffs and to illegally obtain money, property and/or labor from them.

85.     By combining to use unlawful means, and/or combining to commit lawful acts through unlawful means, including without limitation misrepresentation, deception, theft and/or

grand theft to obtain money, property and/or labor from these Plaintiffs, Conspirators engaged in a civil conspiracy in violation of the common law.

86.     As a direct and proximate result of the above-mentioned conspiracy, IHSV, Northwest Osteo, and/or Bennion are entitled to a judgment, jointly and severally, against Wood, Adamson, Tolman, Siasconset, Preventative Health, and Wellness Screenings for damages in an amount to be determined at trial.

## IX.
## SIXTH CAUSE OF ACTION
**(Wrongful Termination of Bennion in Violation of Public Policy Against MVH)**

87.     Bennion realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 86 as if set out in their entirety.

88.     Bennion was employed by MVH as Director of Government Affairs.

89.     Bennion's employment with MVH was considered to be at-will.

90.     Bennion, exercising her legal rights and privileges, engaged in an activity that is protected by the public policy of Idaho (calling into question whether certain billing practices by MVH were being lawfully conducted in conformance with applicable insurance regulations and lawful membership in a limited liability company) and acts as an exception to the at-will employment doctrine.

91.     Bennion's employer, MVH, through its CEO, Adamson, took adverse action against Bennion through acts of intimidation, hostility, duress, and coercion in part to force Bennion to surrender her management responsibilities in IHSV, in part as an attempt to force Bennion to surrender her membership in IHSV, and in part due to Bennion's questioning of MVH billing practices.

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 22

92.     Bennion's working conditions became so intolerable that a reasonable person in her position would have felt compelled to resign from employment with MVH.

93.     Bennion resigned employment from MVH on September 26, 2011.  Bennion's resignation from employment constituted a constructive discharge of her employment.

94.     As a result of the constructive discharge of Bennion's employment by the adverse actions of MVH in contravention of the public policy of the State of Idaho, Bennion has suffered damages in an amount to be proven at trial.

## X.
## SEVENTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith
### and Fair Dealing By Bennion Against MVH)

95.     Bennion realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 94 as if set out in their entirety.

96.     Every employment relationship within the State of Idaho contains an implied covenant of good faith and fair dealing.  The acts and omissions of MVH, through its CEO, Adamson, including but not limited to, acts of intimidation, hostility, duress, and coercion, violated and significantly impaired Bennion's benefits and rights as part of her employment with MVH, thereby breaching the implied covenant of good faith and fair dealing.

97.     As a direct and proximate result of the MVH's actions, Bennion has suffered damages and is entitled to an award of damages in an amount to be proven at trial.

## XI.
## EIGHTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress By Adamson)

98.     Bennion realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 97 as if set out in their entirety.

99.     Adamson, as the CEO of MVH, had a duty to exercise due care not to cause harm to MVH's employees, including Bennion.  Adamson also owed a duty of ordinary care not to injure Bennion.

100.    Adamson breached those duties by threatening to fire Bennion from her position with MVH and through other acts of intimidation, hostility, duress, and coercion designed to: (1) force Bennion to acquiesce and surrender her management responsibilities in IHSV; (2) force Bennion to surrender her membership in IHSV; and (3) retaliate against Bennion for Bennion's questioning of MVH's billing practices.

101.    Adamson's threats and acts of intimidation, hostility, duress, and coercion have caused Bennion to experience emotional harm and distress.

102.    As a direct proximate result of Adamson's threats and acts of intimidation, hostility, duress, and coercion, Bennion has suffered damages and is entitled to an award of damages in an amount to be proven at trial.

## XII.
## NINTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress By Adamson)

103.    Bennion realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 102 as if set out in their entirety.

104.    Adamson's conduct, as described above, was extreme, outrageous, reckless, and intentionally designed to: (1) force Bennion to acquiesce in surrendering her management responsibilities in IHSV; (2) force Bennion to surrender her membership in IHSV; and (3) retaliate against Bennion for Bennion's questioning of MVH's billing practices.

105.    Adamson's threats and acts of intimidation, hostility, duress, and coercion, have caused Bennion to experience severe emotional harm and distress.

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 24**

106.    As a direct proximate result of Adamson's threats and acts of intimidation, hostility, duress, and coercion, Bennion has suffered damages and is entitled to an award of damages in an amount to be proven at trial.

## XIII.
### TENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly Against Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings For Tortious Interference with Contract)**

107.    Northwest Osteo and Bennion reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 106 as if set out in their entirety.

108.    On or about May 1, 2011, MVH entered into a Professional Services Agreement with IHSV (previously referred to as the "May 1, 2011, Agreement").  As of the date herein, the May 1, 2011, Agreement continues to be in full force and effect.

109.    Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings each had knowledge of the May 1, 2011, Agreement.

110.    Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings intentionally interfered and continue to intentionally interfere with the May 1, 2011, Agreement thereby causing an ongoing breach of the Agreement.

111.    As a direct and proximate result of the actions of Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings described above, Northwest Osteo and Bennion have suffered damages and are entitled to an award of damages in an amount to be proven at trial.

## XIV.
### ELEVENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly Against Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings For Tortious Interference with Prospective Economic Advantage)**

112.    Northwest Osteo and Bennion reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 111 as if set out in their entirety.

113.    By virtue of the May 1, 2011, Agreement between IHSV and MVH, Northwest Osteo and Bennion had a valid economic expectancy.

114.    Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware Version), and Wellness Screenings intentionally interfered and continue to interfere with the contractual relations between IHSV and MVH thus inducing termination of Northwest Osteo and Bennion's valid economic expectancy.

115.    The fraudulent and unlawful conduct of Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings was wrongful and intended for an improper purpose.

116.    As a direct and proximate result of Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings' actions described above, Northwest Osteo and Bennion's economic expectancy has been disrupted and they are therefore entitled to an award of damages in an amount to be proven at trial.

## XV.
## TWELFTH CAUSE OF ACTION
### (Northwest Osteo Directly Against Siasconset For Breach of Contract)

117.    Northwest Osteo realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 116 as if set out in their entirety.

118.    On or about April 1, 2011, Siasconset and Northwest Osteo, as members of IHSV, entered into an Operating Agreement (referred to as the "April 1, 2011, Operating Agreement").

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 26

119.    Siasconset has materially breached the April 1, 2011, Operating Agreement by engaging in wrongful conduct that adversely and materially affects the business or affairs of IHSV and by willfully and persistently breaching duties owed to Northwest Osteo.

120.    As a direct and proximate result of Siasconset's actions, under the April 1, 2011, Agreement, Northwest Osteo is entitled to expel Siasconset as a Member of IHSV.

## XVI.
## THIRTEENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly and in its Capacity as a Member of IHSV For Violations of the Idaho Consumer Protection Act Against MVH, Siasconset, Wood, Adamson, Tolman, Preventative Healthcare (Delaware version), and Wellness Screenings)**

121.    Bennion and Northwest Osteo reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 120 as if set out in their entirety.

122.    At all times relevant to this action, Idaho had in effect the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.* prohibiting unfair or deceptive acts or practices in the conduct of business.

123.    The above-referenced fraudulent and unlawful acts of MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings constitute unfair or deceptive acts or practices in the conduct of business.

124.    The above-referenced fraudulent and unlawful acts of MVH, Siasconset, Wood, Adamson, Preventative Health (Delaware version), and Wellness Screenings constitute an unconscionable method, act or practice in the conduct of trade or commerce.

125.    As a direct and proximate result of MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings' actions, Northwest Osteo and Bennion have suffered damages and are entitled to an award of damages in an amount to be proven at trial.

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 27**

## XVII.
## FOURTEENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly and in its Capacity as a Member of IHSV For Violations of the Idaho Trade Secrets Act Against MVH, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness Screenings)**

126.    Bennion and Northwest Osteo reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 125 as if set out in their entirety.

127.    MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version) and Wellness Screenings are "persons" within the meaning of Idaho Code §48-801(3).

128.    MVH, Siasconset, Wood, Adamson, and Tolman used "improper means" within the meaning of Idaho Code §48-801(1) to misappropriate information and property (within the meaning of Idaho Code §48-801(2)) of IHSV, Northwest Osteo and Bennion considered to be trade secrets within the meaning of Idaho Code §48-801(5).

129.    Preventative Health (Delaware version) and Wellness Screenings acquired the misappropriated trade secrets supplied by MVH, Siasconset, Wood, Adamson, and Tolman and knew or should have known that the trade secrets were acquired by improper means and/or proceeded to use the trade secrets without the express or implied consent of IHSV, Northwest Osteo, and/or Bennion in breach of the provisions of the Idaho Trade Secrets Act, Idaho Code §48-801, *et seq.*

130.    As a direct and proximate result of MVH, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness Screenings' breach of the Idaho Trade Secrets Act, IHSV, Northwest Osteo and Bennion have been damaged in amounts to be proven at trial and are entitled to an award of double damages pursuant to the terms of Idaho Code §48-803(2).

## XVIII.
## FIFTEENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly and in its Capacity as a Member of IHSV For Unreasonable Restraint of Trade Against MVH, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness Screenings)**

131.     Bennion and Northwest Osteo reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 130 as if set out in their entirety.

132.     MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version) and Wellness Screenings conspired to withhold payment to IHSV the amounts it was due under the May 1, 2011 Agreement, to misappropriate proprietary information of IHSV, Northwest Osteo, and Bennion, and to divert and channel business away from IHSV and to Preventative Health (Delaware version) and Wellness Screenings.

133.     The actions of MVH, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness Screenings as set forth above harmed and damaged IHSV, Northwest Osteo and Bennion and constitute unreasonable restraints upon Idaho commerce in violation of Idaho Code §48-104.

134.     As a direct and proximate result of MVH, Wood, Adamson, Tolman, Siasconset, Preventative Health (Delaware version) and Wellness Screenings' breach of Idaho Code §48-104, IHSV, Northwest Osteo and Bennion have been damaged in amounts to be proven at trial and are entitled to an award of treble damages pursuant to the terms of Idaho Code §48-113.

## XIX.
## SIXTEENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly Against Siasconset, Wood, Adamson, and Tolman For Breach of Fiduciary Duty)**

135.     Bennion and Northwest Osteo reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 134 as if set out in their entirety.

136.   Northwest Osteo is a member of IHSV.  Danielle Bennion is a member, manager and owner of Northwest Osteo.

137.   Siasconset is the other member of IHSV.  Upon information and belief, Wood, Adamson and Tolman are, or at all times material hereto were, members and owners of Siasconset.

138.   As members and owners of IHSV, Wood, Adamson, Tolman and Siasconset had a fiduciary duty to act in the best interests of IHSV. This fiduciary duty requires, among other things: (1) that Wood, Adamson, Tolman and Siasconset refrain from engaging in grossly negligent or reckless conduct and/or knowing violations of the law; (2) that Wood, Adamson, Tolman and Siasconset account to IHSV and hold as trustee for it property or benefits derived by the member in the conduct of business for or related to IHSV; and (3)  that Wood, Adamson, Tolman and Siasconset refrain from engaging in interests that are adverse to the interests of the IHSV.

139.   In addition, Wood, Adamson, Tolman and Siasconset had a fiduciary duty to abide by the obligations set forth in the April 1, 2011, Operating Agreement.

140.   Wood, Adamson, Tolman and Siasconset breached the fiduciary obligations owed to Northwest Osteo and Bennion by engaging in the acts described in this Complaint which include, but are not limited to: (1) engaging in a plan or conspiracy to misappropriate trade secrets belonging to IHSV; (2) funneling IHSV business in the form of preventative health care screening clinics to a new entity or entities they had created to the exclusion of IHSV, Northwest Osteo and Bennion; (3) encouraging or counseling MVH to breach its agreement with IHSV; (4) usurping corporate opportunities that belonged to IHSV; (5) intentionally interfering with contracts held by IHSV; (6) tortuously interfering with prospective economic advantages held by

IHSV, Northwest Osteo, and Bennion; and (7) violating provisions of the state and federal racketeering laws.

141.    As a direct and proximate result of the above mentioned breaches of fiduciary duty, Northwest Osteo and Bennion have been damaged in an amount to be proven at trial.

## XX.
## SEVENTEENTH CAUSE OF ACTION
### (Northwest Osteo in its Capacity as a Member of IHSV
### for Legal Malpractice Against Wood)

142.    Northwest Osteo realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 141 as if set out in their entirety.

143.    An attorney client relationship existed between IHSV and Wood.

144.    Wood had a duty to perform his functions as counsel for IHSV with reasonable care, skill, loyalty, prudence and diligence.

145.    Wood breached these duties of care by, among other things: (1) breaching ethical obligations owed to IHSV by failing to zealously represent the interests of IHSV; (2) by placing his own financial interests above the interests of IHSV; (3) by representing an entity for which he also had a financial interest without disclosing this conflict of interest; (4) by placing his loyalties, responsibilities or obligations to Adamson and MVH ahead of his loyalties, responsibilities and obligations to IHSV; (5) acting in concert with co-conspirators Adamson, Tolman, MVH, Preventative Health (Delaware Version) and Wellness Screenings to misappropriate confidential and proprietary information of IHSV protected under the Idaho Trade Secrets Act; (6) by providing the misappropriated information to other entities owned, created, operated and/or represented by Wood all to the detriment of IHSV; (7) by creating, owning and/or operating another entity for which the business held by IHSV was funneled, all to the detriment of IHSV; and (8) by breaching obligations owed to IHSV by usurping corporate

opportunities of IHSV for his own benefit and/or the benefit of other entities Wood created, managed, owned, operated and/or represented.

146.     As a direct and proximate result of the breaches of the duties of care Wood owed to IHSV as its attorney, IHSV has suffered damages in an amount to be proven at trial.

## XXI.
## EIGHTEENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly and in its Capacity as a Member of IHSV Against MHV For Unjust Enrichment)**

147.     Bennion and Northwest Osteo reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 146 as if set out in their entirety.

148.     IHSV conferred a benefit upon MVH by conducting preventative health care screening clinics pursuant to the May 1, 2011, Agreement.

149.     MVH appreciated the benefits conferred upon it by IHSV to IHSV's detriment.

150.     MVH has accepted and retained the benefits conferred upon it by IHSV under such circumstances as to make it inequitable for MVH to retain such benefits without the payment of the total value of such benefits to IHSV.

151.     MVH has thus been unjustly enriched in an amount to be proven at trial.

## XXII.
## NINETEENTH CAUSE OF ACTION
**(Bennion and Northwest Osteo Directly and in its Capacity as a Member of IHSV for Conversion Against MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version), and Wellness Screenings)**

152.     Bennion and Northwest Osteo reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 151 as if set out in their entirety.

153.     The acts of MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version) and Wellness Screenings described above constitute a substantial

interference with the personal property of IHSV, Northwest Osteo and/or Bennion so severe as to amount to an assertion of dominion and control over the property.

154.   As such, MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version) and Wellness Screenings are liable to IHSV, Northwest Osteo and/or Bennion for conversion of the property.

155.   As a direct and proximate result of the conversion of IHSV, Northwest Osteo and/or Bennion's property by MVH, Siasconset, Wood, Adamson, Tolman, Preventative Health (Delaware version) and Wellness Screenings, IHSV, Northwest Osteo and/or Bennion have been damaged in an amount to be proven at trial.

## XXIII.
## TWENTIETH CAUSE OF ACTION
### (Fraud in the Inducement Against Adamson)

156.   Bennion and Northwest Osteo reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 155 as if set out in their entirety.

157.   On March 18, 2011, Bennion sent an explanatory e-mail to Wood proposing a business arrangement, whereby her company, Northwest Osteo, would perform certain on-site preventative health care services which would be billed out to the patients' health insurance providers by MVH, which is a "credentialed provider."  As noted in the March 18, 2011, e-mail, MVH would then retain a percentage of the collected revenue and Northwest Osteo would receive the remainder of the collected revenue.  In addition to its retained percentage of collected revenue, MVH also stood to benefit financially by referrals of these patients from Northwest Osteo for any necessary follow-up services or procedures.

158.   Adamson thereafter represented to Bennion, and in fact insisted, that in order for the proposed business proposition to be smoothly and quickly implemented and to ensure that

Bennion receive prompt payment, it would be necessary to have Wood form a new business entity to perform these services in which Bennion would own fifty percent (50%) and Adamson, Wood, and Tolman would own the other fifty percent (50%). Adamson represented to Bennion that Wood would serve as a "filter" between MVH and this new entity to "ensure" payments were made in a timely manner.

159.   The above representations by Adamson to Bennion were false, were made with Adamson's knowledge of their falsity, and were made with the intent to induce Bennion to form IHSV with Wood and/or Siasconset and/or its predecessors.

160.   The above representations by Adamson to Bennion were material in that they laid the groundwork for the creation of IHSV.

161.   Given that Adamson was the CEO of her employer at the time, MVH, Bennion relied and had a right to rely upon the truth of Adamson's statements and was thus ignorant of their falsity.

162.    As a direct and proximate result of Adamson's conduct described above, Bennion and Northwest Osteo have been damaged in an amount to be proven at trial.

**XXIV.**
**TWENTY-FIRST CAUSE OF ACTION**
**(Demand for an Accounting)**

163.   Plaintiffs reallege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 162 as if set out in their entirety.

164.   The parties' rights in this matter cannot be determined without a formal accounting.

165.   As a result of the Plaintiffs' strong evidence of the Defendants' wrongful conduct, showing that it is more probable than not that Wood, Adamson, Tolman and Siasconset breached

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL - 34**

fiduciary duties owed to the Plaintiffs and wrongfully appropriated money and property belonging to the Plaintiffs, it would be equitable for this Court to order the Defendants to undertake and pay for an accounting for all proceeds due under the May 1, 2011, Agreement between MVH and IHSV, as well as an accounting of the proceeds that are due under MVH's contracts with Preventative Health (Delaware version) and/or Wellness Screenings.

166.    For the reasons stated above, Plaintiffs seek an order of this Court requiring Defendants to undertake and pay for an accounting forthwith.

## PUNITIVE DAMAGES

Plaintiffs reserve the right to move for leave to amend their Complaint pursuant to Idaho Code §6-1604 for an award of punitive damages on each applicable cause of action stated herein and as allowed by law and the circumstances of this case in an amount to be determined at trial.

## RESERVATION OF CLAIMS

Plaintiffs have not completed their investigation of this matter and have not conducted any discovery.  Plaintiffs therefore reserve the right, and give Defendants notice, that Plaintiffs may amend this Complaint to state other necessary claims and/or causes of action that come to light during the course of discovery in this matter.

## INTEREST

The portion of Plaintiffs' damages based on breach of contract are liquidated and well known to the Defendants.  Plaintiffs are thus entitled to an award of prejudgment interest on these liquidated sums from the time of IHSV's Counsel's demand therefore on behalf of the Plaintiffs.

## COSTS AND ATTORNEY FEES

Plaintiffs have been forced to retain the services of Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A. to bring this action and are entitled to their reasonable costs and attorney fees pursuant to Idaho Code § 12-120, Idaho Code § 12-121, Idaho Code § 30-6-906, Idaho Code § 18-7805, Idaho Code §48-113, Idaho Code § 48-601, 18 U.S.C. § 1964(c), the May 1, 2011, Agreement, the April 1, 2011, Operating Agreement or other applicable laws.  As noted above, Plaintiffs are also entitled to an award of prejudgment interest at the maximum rate allowable by law. A reasonable attorney fee in the event that judgment is entered by default is $10,500.00.

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of not fewer than twelve (12) persons on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment in its favor and against Defendants as follows:

(a)     For judgment against Defendants in an amount to be proven at trial;

(b)     For treble damages as allowed under 18 U.S.C. § 1964(c) and Idaho Code § 18-7805;

(c)     For treble damages as allowed under Idaho Code § 48-113;

(d)     For double damages as allowed under Idaho Code § 48-803(2);

(e)     For an accounting of all proceeds due under the May 1, 2011, Agreement between MVH and IHSV, as well as an accounting of the proceeds that are due under MVH's contracts with Preventative Health (Delaware version) and/or Wellness Screenings;

(f)     For expulsion of Siasconset as a member of IHSV;

      (g)     For additional injuries and damages yet to be discovered and to be proven at trial;

      (h)     For reasonable costs and attorney fees necessarily incurred in pursuing this action;

      (i)     For pre- and post-judgment interest as allowed by law; and,

      (j)     For such other and further relief as this Court deems just, equitable and proper under the circumstances.

DATED This _____ day of September, 2013.

                           Jones ♦ Gledhill ♦ Fuhrman ♦ Gourley, P.A.

                       By: _____

                           Rory R. Jones
                           Attorneys for Plaintiffs

## VERIFICATION

STATE OF IDAHO    )
                  ) ss.
County of Ada     )

Danielle Bennion, being first duly sworn, deposes and says:

That she has read the foregoing document, knows the contents thereof, and believes the same to be true and correct to the best of her information, knowledge and belief.

_____
Danielle Bennion

SUBSCRIBED AND SWORN to before me this 17th day of September, 2013.

_____
Notary Public for Idaho
Residing at _____Boise_____, Idaho
Commission expires: ___10/7/16___