UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTHWEST OSTEOSCREENING, INC., an Idaho corporation, directly and derivatively in its capacity as a member of IDAHO HEALTH SCREENINGS AND VACCINATIONS, LLC, an Idaho limited liability company, PREVENTATIVE HEALTH, LLC, an Idaho limited liability company, and DANIELLE BENNION,<br><br>                Plaintiffs,<br>  v.<br><br>MOUNTAIN VIEW HOSPTIAL, LLC, a Delaware limited liability company, BENJAMIN WOOD, JAMES ADAMSON, JOSH TOLMAN, SIASCONSET, LLC, an Oregon limited liability company, PREVENTATIVE HEALTH, LLC, a Delaware limited liability company, WELLNESS SCREENINGS, LLC, an Idaho limited liability company, and DOE ENTITIES I – X,<br><br>                Defendants. | Case No. 4:13-cv-00414-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**I**

Plaintiffs brought suit against Defendants alleging violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and twenty-one state-law claims. *Amend. Compl.*, dkt. 28. Defendants moved to dismiss Plaintiffs' RICO claims for failure to state a claim, and to dismiss the state-law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The Court granted the motion in its entirety. *Oct. 2, 2014 MDO*, dkt. 39.

Having prevailed on their motion to dismiss, Defendants now move for attorney fees and costs. *See Dkts.* 45 & 46.[1] Because RICO provides for attorney fees to prevailing plaintiffs, not defendants, and because Defendants have not established an alternative authorization for fees, the Court will deny Defendants' request for attorney fees. The Court further concludes that Defendants are not entitled to costs.

**II**

RICO authorizes district courts to award "a reasonable attorney[] fee" to prevailing plaintiffs, but it does not authorize an award to a party who successfully defends against a RICO claim. *Chang v. Chen*, 95 F.3d 27, 28 (1996); *see also* 18 U.S.C. § 1964(c). "Courts, however, have never construed this provision as precluding a prevailing defendant from recovering attorney[] fees when authorized elsewhere." *Chang*, 95 F.3d at 28. The alternative authorizations to which Defendants point are (A)

---

[1] Defendants filed two prior motions for attorney fees and costs. Dkts 40, 41. These motions are substantially identical to the motions listed at dkts 45 and 46. The Court determines that the motions at dkts 45 and 46 are the operative motions before the Court. The Court will deny as moot Defendants' prior motions. Dkts 40, 41.

Idaho Code § 12-120(3), which mandates an award of attorney fees to the prevailing party in a commercial dispute, *see BECO Constr. Co. v. J-U-B Eng'rs, Inc.*, 184 P.3d 844, 851 (Idaho 2008), and (B) the "Professional Services Agreement" ("PSA") between Idaho Health Screenings & Vaccinations, LLC and defendant Mountain View Hospital, LLC. Neither of these authorities authorize a fee award.

**A.     § 12-120(3)**

Defendants' argument for attorney fees under Idaho Code § 12-120(3) starts from a flawed premise. They argue that a federal district court with jurisdiction over state law claims, here pursuant to 28 U.S.C. § 1367, applies the law of the forum state to award attorney fees. Defendants invoke the *Erie* doctrine, but they mistake it for a jurisdictional rule.

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny require federal courts to apply substantive state law in certain circumstances. *See Alyeska Pipeline Co v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975). However, "the basis of a federal court's jurisdiction over a state law claim is irrelevant for *Erie* purposes." *In re Exxon Valdez*, 484 F.3d 1098, 1100 (9th Cir. 2007).

Instead, it is a choice-of-law rule. "'Where state law supplies the rule of decision, it is the duty of federal courts to ascertain and apply that law.'" *Id.* The rule is most often applied where a federal court adjudicates a state-law claim under its diversity or supplemental jurisdiction, but the rule is not isolated to those situations. At times, a federal court exercising its original jurisdiction over a federal question is required to

apply state law as well.  *See* 19 Wright, Miller, et al., *Federal Practice & Procedure* § 4520 (2d ed.).[2]

Regardless of the basis of its jurisdiction, a federal court is not required to ascertain and apply state substantive law, *see id.*, and those state rules which "affect the enforcement of the right as given by the State," *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945), until that right is actually adjudicated.  Before the right comes into play, there is no risk that the party claiming the right will be denied equal protection of the law.  Absent that risk, there is no justification to invoke the *Erie* doctrine.[3]  *See Hanna v. Plumer*, 380 U.S. 460, 467 (1965) ("The *Erie* rule is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court.").  Just as a litigant should not be able to thwart the "substantial policy of the state" regarding attorney fees by litigating a dispute over state-created rights in federal court, *Alyeska Pipeline*, 421 U.S. at 260 n.31,

---

[2] RICO provides a good example as well.  For a defendant to be liable under RICO's substantive provisions, he must have committed a "pattern of racketeering activity."  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989).  "Racketeering activity" includes certain "specified state-law crimes."  *Id.* at 232.  Whether or not a defendant's conduct violated an enumerated crime is controlled by that state's law.  *See* 18 U.S.C. § 1961(1)(A) (defining racketeering activity to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), *which is chargeable under State law* and punishable by imprisonment for more than one year" (emphasis added)); *United States v. Carrillo*, 229 F.3d 177, 186 (2d Cir. 2000) (noting without deciding that the text of § 1961(1)(A) "seem[s] to require of a predicate act based on state law that the act include the essential elements of the state crime").

[3] Equal protection of the law is not the only concern of *Erie* and its progeny.  "The decision was also in part a reaction to the practice of 'forum shopping' which had grown up in response to the rule of *Swift v. Tyson*."  *Hanna*, 380 U.S. at 467.  However, forum shopping is not a relevant concern in this case.

a litigant should not be allowed to shoehorn a state's policy into a dispute over federal rights. A contrary result would deprive the opposing party of her reasonable reliance on the American rule regarding attorney fees, *see id.* at 247, and disregard Congress's judgment on the matter, all without any substantial justification for the departures.

Idaho Code § 12-120(3) represents Idaho's allocation of the "cost[s] of using the court system to resolve disputes in specified types of commercial transactions." *Sanders v. Lankford*, 1 P.3d 823, 828 (Id. Ct. App. 2000), *overruled in part on other grounds by BECO Constr. Co. v. J-U-B Eng'rs, Inc.*, 184 P.3d 844 (Idaho 2008) (quoting *DeWils Interiors, Inv. v. Dines*, 678 P.2d 80, 83 (Idaho 1984)). "In effect," §12-120(3) is a statutory "adjunct to the underlying commercial agreement between the parties." *Griggs v. Nash*, 775 P.2d 120, 127 (Idaho 1989). Plaintiffs' federal RICO claims, however, were not a dispute over the PSA or the commercial rights of the parties. RICO "serve[s] independent federal purposes . . . ." *United States v. Zemek*, 634 F.2d 1159, 1164 n.4 (9th Cir. 1980). It exists to combat organized crime and racketeering. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498 (1985); *Russello v. United States*, 464 U.S. 16, 26-29 (1983); *see also Chang*, 95 F.3d at 29 (holding that plaintiffs' "RICO action did not arise out of any one of the [underlying] contracts," because "RICO's pattern requirement could be satisfied only because there were three land transactions"). Defendants' position as the prevailing party to the RICO claims does not implicate the judgment the Idaho legislature made when it enacted § 12-120(3). This is all the more true when one

considers that Plaintiffs have refiled the majority of their state-law claims in state court, and that court can make the proper fee award once those claims have been adjudicated.

Furthermore, the Supreme Court has made clear that "whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Id.* Here, at Defendants' request, the Court chose not to exercise its jurisdiction of the state claims and dismissed them without prejudice. In this situation, § 12-120(3)'s mandate does not apply.

**B.     The PSA**

Defendants argue that they are entitled to attorney fees under the PSA, which states, "The prevailing party shall recover its reasonable costs and attorney[] fees." *PSA*, dkt. 46-5, at 10. However, as Defendants concede, this statement "is specifically tied to the requirement for mediation or binding arbitration." *Def.'s Memo.*, dkt. 46-1, at 9. The parties chose not to follow the agreed upon method of dispute resolution, and the Court is powerless to "revise the contract in order to change or make a better agreement." *McKay v. Boise Project Bd. of Control*, 111 P.3d 148, 156 (Idaho 2005) (internal quotation mark and citation omitted). Therefore, Defendants are not entitled to an award for attorney fees under the PSA.

**III**

Defendants also request costs in the amount of $6,879.96 for computerized legal research and $4,242.99 for the production of IHSV's client records pursuant to *Fed. R. Civ. P.* 54(d)(1) and *Local Rule* 54.1(c)(8). Defendants argue that the cost of the computerized research is recoverable as part of their attorney fees. Because Defendants are not entitled to attorney fees, the Court will disallow this request.

The Court will also disallow the costs for copying and producing IHSV's client records. "In this district, the Court has chosen to limit costs for copies to those attached to a document required to be filed and served." *Boise Tower Assoc., LLC v. Wash. Capital Joint Master Trust Mortgage Income Fund*, No. 03-141-S-MHW, 2007 WL 4355815, at *7 (D. Idaho Dec. 10, 2007). "'The cost of reproducing . . . other routine case papers is not taxable.'" *Id.* (quoting *Dist. Id. Loc. Civ. R.* 54.1(c)(5)). This includes Defendants' costs for reproducing IHSV's client files as part of discovery.

**ORDER**

IT IS ORDERED THAT:

1. Defendants' Motion for Attorney Fees and Costs (dkt. 40) is **DENIED** as moot.[4]

2. Defendants' Motion for Attorney Fees (dkt. 41) is **DENIED** as moot.

---

[4] Because of a mix-up in the timing of the filing of the Judgment in this case, each defendant filed two separate motions for attorney fees. After an informal discussion with the Court's staff, the parties and the Court agreed that the initial set of motions would be denied as moot, and the Court would address the second set of motions, which are substantively the same as the first set of motions.

3. Defendants' Motion for Attorney Fees (dkt. 45) is **DENIED** for the reasons stated herein.

4. Defendants' Post-Judgment Motion for Attorneys' Fees and Costs (dkt. 46) is **DENIED** for the reasons stated herein.

DATED: February 9, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court